The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TYLER ZANDERS, KAYE HORINEK, and ROBERT NICHOLS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. 2:11-cv-00494-RSL<br><br>**FIRST AMENDED COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMAND** |

Plaintiffs TYLER ZANDERS, KAYE HORINEK, and ROBERT NICHOLS on behalf of themselves and all others similarly situated, sue Defendant, AMAZON.COM, INC., and in support thereof, state as follows:

1. This is a class action. Plaintiffs bring this action on their own behalf and on behalf of all similarly situated individuals.

**I.**

**PARTIES**

2. Plaintiff TYLER ZANDERS is a resident of Van Nuys, California.

3. Plaintiff KAYE HORINEK is a resident of Camarillo, California..

4. Plaintiff ROBERT NICHOLS is a resident of Coppel, Texas.

FIRST AMENDED COMPLAINT - 1

MEYERS TERSIGNI FELDMAN & GRAY LLP
Two Union Square
601 Union Street, Suite 4200
Seattle, WA  98101-2380
(206) 652-3525

5. Defendant AMAZON.COM, INC. is a Delaware corporation with its principal place of business in Seattle, Washington.

## II.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 (federal question jurisdiction) as this lawsuit involves violations of federal law. This Court also has jurisdiction under 28 U.S.C. §1332(d)(2) (diversity jurisdiction) as this case is a class action, Plaintiffs are citizens of states different from Defendant, and the amount in controversy exceeds the aggregate sum or value of $5,000,000. Furthermore, this Court has supplemental jurisdiction over any accompanying causes of action for violation of the laws of the State of Washington, the laws of the State of Washington, in addition, governing any dispute of any sort, without regard to principles of conflict of laws, that might arise between Plaintiffs and Class members and Defendant pursuant to Defendant's Conditions of Use set forth at http://www.amazon.com/gp/help/customer/display.html/ref=footer_cou/179-6280013-0516053?ie=UTF8&nodeId=508088.

7. This Court has personal jurisdiction over Defendant because Defendant resides in, and conducts business in, this District.

8. Venue is appropriate in this District because both members of the Class and Defendant are residents of the Western District of Washington. Further, pursuant to Defendant's Conditions of Use (cited above), any dispute between Plaintiffs and Class members and Defendant in which the aggregate total claim for relief sought on behalf of one or more parties exceeds $7,500, as is the case in the instant action, shall be adjudicated in any state or federal court in King County, Washington.

## III.

## FACTS APPLICABLE TO ALL COUNTS

9. This is a consumer Class Action lawsuit pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

FIRST AMENDED COMPLAINT - 2

MEYERS TERSIGNI FELDMAN & GRAY LLP
Two Union Square
601 Union Street, Suite 4200
Seattle, WA 98101-2380
(206) 652-3525

10. The basis for Plaintiffs' claims rests on Defendant's manipulation of Plaintiffs' and Class members' computers for the purpose of setting "cookies" on those computers to improperly procure personal, private information. Defendant has been misleading its customers such as Plaintiffs and Class members in order to place two types of unwanted "cookies" on their computers.

**A.   Defendant's use of Invalid Compact Policies**

11. First, Defendant has been utilizing a vulnerability in Microsoft's Internet Explorer ("IE"), specifically IE 6, 7, and 8, the web browser used by Plaintiffs and Class members, by submitting false information to IE to trick it into accepting "cookies" from Defendant's website.

12. A "cookie," also known as a web cookie, browser cookie, and/or HTTP cookie, is a piece of text stored by a user's web browser. A "cookie" can be used for authentication, storing site preferences, shopping cart contents, the identifier for a server-based session, or anything else that can be accomplished through storing text data.

13. "Cookies" are often used by a website operator to identify a particular visitor of a website when that user visits the website again. It is this feature of "cookies" that makes them very popular with web site operators. Because most web operators are paid by advertisers based on the number of visitors to the web site, keeping track of individual visitors is valuable information.

14. IE does not simply allow any website wishing to place a cookie on a person's computer to do so. Rather, IE sets certain user adjustable parameters. IE relies on information submitted by the website to determine whether that website's use of the cookie meets with the visitor's privacy settings.

15. In 2002, the Platform for Privacy Preferences (P3P) developed a recommended protocol for allowing web site operators to submit machine readable privacy policies to the user's web browser so that the browser would be able to automatically assess whether a

FIRST AMENDED COMPLAINT - 3

MEYERS TERSIGNI FELDMAN & GRAY LLP
Two Union Square
601 Union Street, Suite 4200
Seattle, WA  98101-2380
(206) 652-3525

website's cookie use comports with the computer user's preferences. This recommended protocol was developed as an attempt at industry self regulation.

16. Under the P3P proposal, websites were to develop human readable privacy policies and were to develop a machine readable version that could be utilized by a website visitor's computer in lieu of having to read the lengthy human readable policy. This machine readable policy is called a Compact Policy ("CP").

17. A CP is essentially a string of three digit codes, or "tokens," each of which describes particular characteristics of the cookie that the website wants to place on the user's computer. Based on the security settings placed by the computer user, the web browser can then automatically determine whether to allow the website to place the cookie on a user's machine without the user having to actually inspect the website's human readable policy.

18. Prior to implementation of the P3P protocols, a user would have to either block all cookies from being placed on their computer, or go through the laborious task of manually reading the full privacy policy of all of the websites it wished to visit. In addition, the user would have to go back and check those policies each time it visited the website to ensure that the policy had not changed.

19. The alternative was to simply allow any website to place cookies on the user's computer for whatever tracking purpose the website wished to use the cookies. Thus, implementation of the P3P protocol was of enormous benefit to consumers in that it allowed them to rely on their computer to keep track of a website's privacy policies automatically.

20. Microsoft helped to drive implementation of P3P by using the P3P protocols for its internet browser, IE. IE, however, has a vulnerability in the way it evaluates CPs. IE only looks for invalid combinations of tokens. If IE encounters a token that it does not recognize, it will still allow the cookie to be set on the user's computer. Specifically, IE ignores invalid tokens altogether and does not check the CP to determine if the minimum required tokens are present.

FIRST AMENDED COMPLAINT - 4

MEYERS TERSIGNI FELDMAN & GRAY LLP
Two Union Square
601 Union Street, Suite 4200
Seattle, WA 98101-2380
(206) 652-3525

21. While some websites will occasionally mistakenly misspell tokens in the CP policy, indicating a mere input error, Defendant, during all times relevant to this complaint, intentionally used a CP code that had absolutely no meaning under the P3P protocols. The CP used by Defendant was gibberish and was intentionally designed to be gibberish so that IE would allow Defendant's cookies to be placed on Plaintiffs' and Class members' computers.

22. This practice was confirmed and recently reported by researchers at Carnegie Mellon University on September 10, 2010. *See* Pedro G. Leon, Lorrie F. Cranor, Aleecia M. MacDonald, Robert McGuire, *Token Attempt: The Misrepresentation of Website Privacy Policies through the Misuse of P3P Compact Policy Tokens* (September 10, 2010), available at http://repository.cmu.edu/cgi/viewcontent.cgi?article=1072&context=cylab&sei-redir=1#search=%22Token+Attempt:+The+Misrepresentation+of+Website+Privacy+Policies+through+the+Misuse+of+P3P+Compact+Policy+Tokens%22, incorporated herein by reference.

23. In their study, the authors evaluated the CP used by Defendant and concluded that it contains a "single invalid token and no other tokens . . . It appears that [defendant] use[s] a CP only for the purpose of avoiding IE cookie filtering." *Id.* at 7.

24. In other words, Defendant falsely represented to its website visitors that it had a CP policy, when, in fact, it did not. Defendant did so because had it not submitted a CP policy to its website visitors computers, IE would have blocked the cookie from being placed on the user's machine.

25. Plaintiffs are persons who visited Defendant's website. Plaintiffs relied on IE to implement their user settings to determine whether to allow Defendant's cookie to be placed on their computers. Thus, Defendant's actions caused a cookie to be placed on Plaintiffs' computers without Plaintiffs' consent. Defendant's actions also allowed Defendant to obtain information about Plaintiffs that Defendant otherwise would not have been able to obtain.

FIRST AMENDED COMPLAINT - 5

MEYERS TERSIGNI FELDMAN & GRAY LLP
Two Union Square
601 Union Street, Suite 4200
Seattle, WA 98101-2380
(206) 652-3525

26. Thus, Plaintiffs were essentially paying a price to use Defendant's website – use of Plaintiffs' information and use of Plaintiffs' computers. This price was not disclosed to Plaintiffs.

**B.     Defendant's use of "Flash Cookies"**

27. Defendant also utilized another method of obtaining information from Plaintiffs and Class members without disclosing such methods. Defendant used a feature of Adobe Flash Player to place hidden files on Plaintiffs' computers that are not easily detectible and are not deleted by normal cookie-deleting functions in Plaintiffs' web browsers.

28. Defendant did so because there is a significant limitation from the standpoint of web operators and advertisers in using traditional "cookies" to keep track of which consumers are visiting their websites, such limitation being that most consumers do not want to be so tracked. Therefore, many consumers frequently utilize a feature of most web browsers which allows the user to delete all "cookies" on a user's computer hard drive.

29. Mindful of the ease with which consumers are able to delete a website's traditional "cookies," Defendant is using a new form of "cookie." Able to exploit a function of Adobe's Flash Player, Defendant placed "cookies" with much different characteristics than a consumer with an ordinary understanding of "cookies" would expect from a website.

30. Adobe Flash Player is a software program for displaying video on websites. An internet user with Adobe Flash Player installed on his or her computer can view web content that could not be viewed without Adobe Flash Player. In order to allow the internet user to view this video content, it is often necessary for the video provider to install files on the internet user's hard drive. These files, also known as "Local Shared Objects" ("LSO") offer many advantages for website operators or advertisers who wish to use them to store identity tracking "cookies" on an internet user's computer hard drive.

31. First, these "Flash Cookies," as some academics describe them, do not have an expiration date. Traditional "cookies," i.e., those stored on the user's web browser, normally

FIRST AMENDED COMPLAINT - 6

MEYERS TERSIGNI FELDMAN & GRAY LLP
Two Union Square
601 Union Street, Suite 4200
Seattle, WA 98101-2380
(206) 652-3525

disappear, or expire, at the end of a user's internet session. Because "Flash Cookies" are stored on a computer's hard drive, they never expire unless found and deleted by the user.

32. Second, because "Flash Cookies" are not saved within the file structure of a website visitor's web browser, normal attempts to delete "cookies" through the web browser are completely ineffective in removing them. In fact, the internet user is often unaware that the "Flash Cookie" has even been placed on his or her machine, much less how to remove them.

33. Third, because "Flash Cookies" are not stored in the user's web browser, "Flash Cookies" can be used to track a user's internet usage over multiple browsers.

34. Finally, for those companies determined to thwart their customer's will, another option is available. A "Flash Cookie" that mirrors a traditional "cookie" can be simultaneously placed on the user's computer so that if the user deletes the traditional "cookie," the "Flash Cookie" acts to replace and rewrite the original traditional "cookie." In essence, the "Flash Cookie" can completely counteract the computer owner's action as to that "cookie."

35. Concern has been building for some time over companies' questionable uses of "Flash Cookies" and particularly the failure to disclose either their existence or their persistence.

36. Indeed, Defendant has been using "Flash Cookies" to improperly track Plaintiffs' and Class members' identity and purchasing habits.

37. Defendant placed LSO files on Plaintiffs' computers with such names as apnUserId.sol.

38. Plaintiffs and Class members were never adequately warned or told that such files were being placed on their computers.

39. Specifically, Plaintiffs and Class members were never warned that a "Flash Cookie" was being placed on their computers. They were never warned that the "cookie" was being hidden on their hard drive, rather than being placed within the file structure of their web browser where they could be more easily found. They were never told that conventional attempts to erase such a cookie would be completely ineffective at removing it. Finally, they

FIRST AMENDED COMPLAINT - 7

MEYERS TERSIGNI FELDMAN & GRAY LLP
Two Union Square
601 Union Street, Suite 4200
Seattle, WA 98101-2380
(206) 652-3525

were never told that their Adobe Flash Player was being used in a way it was never designed to be used, in other words, to allow Defendant to procure Plaintiffs' and Class members' personal, private information and track their internet use.

40. Plaintiffs and Class members were harmed by Defendant's actions in that their personal, private information was procured from their computers without their knowledge or consent. Thus, Plaintiffs' and Class members' personal property – their computers and their personal, private information – were essentially hijacked by Defendant who turned their computers into devices capable of spying on their every online move in order to improperly procure their valuable personal, private information.

41. This information, wrongfully and impermissibly obtained from files surreptitiously accessed by Defendant, was and continues to comprise valuable research data which can be sold to marketing research firms. As recently reported by The Wall Street Journal, consumer data has become a sellable research commodity. Julia Angwin and Emily Steel, *Web's Hot New Commodity: Privacy*, The Wall Street Journal (February 28, 2011). Defendant wrongfully benefited by taking this economically valuable information from Plaintiffs and Class members without their knowledge or consent. Furthermore, reducing the scarcity of Plaintiffs' and Class members' valuable information, Defendant reduced the economic value of such information, causing Plaintiffs and Class members economic harm.

42. Plaintiffs and Class members bring this action to redress this illegal and intrusive scheme designed by Defendant to intrude into their personal lives and collect personal information about them.

43. Plaintiffs and Class members seek damages for their injuries, an injunction to protect those harmed by these illegal activities, and, where legally available, attorneys' fees and other costs associated with the bringing of this action.

44. Injunctive relief is required because there is no indication that Defendant's actions have halted or will halt in the foreseeable future.

FIRST AMENDED COMPLAINT - 8

MEYERS TERSIGNI FELDMAN & GRAY LLP
Two Union Square
601 Union Street, Suite 4200
Seattle, WA 98101-2380
(206) 652-3525

## IV.

## **CLASS ACTION ALLEGATIONS**

45. Pursuant to Fed. R. Civ. P. 23(b)(3), and 23(b)(2) Plaintiffs bring this action on behalf of themselves, and all others similarly situated, as representative of the following class (the "Class"):

> Each and every United States resident who has visited Defendant's website during the period in which Defendant has been engaging in the conduct complained of.

> Excluded from the class are Defendant as well as all employees of this Court, including, but not limited to, Judges, Magistrate Judges, clerks and court staff and personnel of the United States District Court for the Western District of Washington, the United States Court of Appeals for the Ninth Circuit and the United States Supreme Court; their spouses and any minor children living in their households and other persons within a third degree of relationship to any such Federal Judge; and finally, the entire jury venire called for jury service in relation to this lawsuit. Also excluded from the class are any attorneys or other employees of any law firms hired, retained and/or appointed by or on behalf of the named Plaintiffs to represent the named Plaintiffs and/or any proposed Class members or proposed class in this lawsuit.

> Furthermore, to the extent that undersigned counsel has any legal interest with respect to damages or other monetary relief, or other relief due to the putative class (or any other rights as potential

FIRST AMENDED COMPLAINT - 9

MEYERS TERSIGNI FELDMAN & GRAY LLP
Two Union Square
601 Union Street, Suite 4200
Seattle, WA 98101-2380
(206) 652-3525

1  Class members), arising as a result of the causes of action asserted
2  in this litigation, such interest is hereby disclaimed by undersigned
3  counsel.

46. The requirements of Fed. R. Civ. P. 23 are met in this case. The Class, as defined, is so numerous that joinder of all members is impracticable. Although discovery will be necessary to establish the exact size of the class, it is likely, based on the nature of Defendant's business, that it numbers in the millions.

47. There are questions of fact and law common to the Class as defined, which common questions predominate over any questions affecting only individual members. The common questions include:

   a. Whether Defendant, as a regular practice, used false and invalid CP codes to allow it to place cookies on Plaintiffs' and Class members' computers;

   b. Whether Defendant impermissibly placed Adobe Flash Player LSO files on Plaintiffs' and Class members' computers;

   c. Whether Defendant failed to disclose material terms regarding its practices involving Plaintiffs' and Class members' computers; and

   d. What use was made of the cookies Defendant placed on Plaintiffs' and Class members' computers, including whether they were used for purposes of tracking individuals web surfing and whether personal information was obtained regarding members of the class.

48. Plaintiffs can and will fairly and adequately represent and protect the interests of the Class as defined and has no interests that conflict with the interests of the Class. This is so because:

   a. All of the questions of law and fact regarding the liability of Defendant are common to the class and predominate over any individual issues that may exist, such that by

FIRST AMENDED COMPLAINT - 10

MEYERS TERSIGNI FELDMAN & GRAY LLP
Two Union Square
601 Union Street, Suite 4200
Seattle, WA 98101-2380
(206) 652-3525

prevailing on his own claims, Plaintiffs will necessarily establish the liability of the Defendant to all Class members;

      b.    Without the representation provided by Plaintiffs, it is unlikely that any Class members would receive legal representation to obtain the remedies specified by relevant statutes and the common law;

      c.    Plaintiffs have retained competent attorneys who are experienced in the conduct of class actions. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the Class members and are determined to diligently discharge those duties to obtain the best possible recovery for the Class.

49. Defendant's actions have affected numerous consumers in a similar way. The class action is superior to any other method for remedying Defendant's actions given that common questions of fact and law predominate. Class treatment is likewise indicated to ensure optimal compensation for the Class and limiting the expense and judicial resources associated with thousands of potential claims.

## V.

## CLAIMS FOR RELIEF

### COUNT 1 – COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030 et seq.

50. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

51. Plaintiffs' computers and those of the Class are used in and/or affect interstate commerce or communication and are, therefore, protected computers pursuant to the Computer Fraud and Abuse Act (the "Act"), 18 U.S.C. § 1030(e)(2)(B).

52. By using invalid CP codes to place traditional cookies and by impermissibly placing "Flash Cookies" on Plaintiffs' and Class members' computers, Defendant intentionally accessed such computers, in the course of interstate commerce and/or communication, without

FIRST AMENDED COMPLAINT - 11

MEYERS TERSIGNI FELDMAN & GRAY LLP
Two Union Square
601 Union Street, Suite 4200
Seattle, WA 98101-2380
(206) 652-3525

authorization and/or in excess of authorization provided by Plaintiffs and Class members, thereby procuring information from protected computers in violation of 18 U.S.C. § 1030(a)(2)(C).

53. Defendant further violated the Act, 18 U.S.C. § 1030(a)(5), by knowingly causing the transmission of a program, information, code or command and, as a result, intentionally causing damage, aggregating at least $5,000 in value, including, but not limited to, the improper procurement of and loss of value of personal, private information.

54. Defendant's actions were knowing and/or reckless and caused harm to Plaintiffs and Class members.

55. Plaintiffs seek recovery of damages for this harm, as well as injunctive relief, to prevent future harm.

### COUNT II - WASHINGTON CONSUMER PROTECTION ACT, RCW § 19.86.010 et seq.

56. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

57. The Washington Consumer Protection Act ("CPA"), RCW 19.86.010 et seq., prohibits (a) an unfair or deceptive act or practice, (b) occurring in trade or commerce, (c) injurious to the public interest, (d) causing injury.

58. Defendant's conduct as described above constitutes unfair and deceptive business acts and practices that did and/or had a capacity to deceive at least a substantial portion of the public in that:

    a. Defendant posted a misleading Compact Policy that it knew and/or should have known IE would treat as acceptable under IE's default (or higher) privacy settings;

    b. Defendant stored and used Adobe Flash Local Shared Objects on Plaintiffs' and Class members' computers without adequate notice or consent;

FIRST AMENDED COMPLAINT - 12

MEYERS TERSIGNI FELDMAN & GRAY LLP
Two Union Square
601 Union Street, Suite 4200
Seattle, WA 98101-2380
(206) 652-3525

59. Defendant's acts and/or practices set forth above occurred in the conduct of trade or commerce in connection with, and in the course of, the sale of Defendant's business assets and/or services through its website.

60. Defendant's conduct is injurious to the public interest because it has injured not only Plaintiffs, but other persons constituting the Class who have used and continue to use the internet in the State of Washington, with respect to whom Defendant has and continues to inflict its improper procurement and use of their personal, private information. Further, Defendant's conduct, at the very least, had and/or has the capacity to continue to injure other persons because Defendant continues to engage in the pervasive unlawful practices set forth herein.

61. As a proximate and direct result of Defendant's conduct, Plaintiffs and Class members have been injured in their business and/or property as described above.

62. Unless Defendant is enjoined from its unfair and deceptive acts and practices as alleged herein, Defendant will continue to cause damage to consumers.

63. Pursuant to RCW § 19.86.090, Plaintiffs and the Class seek to recover actual and treble damages, costs of suit, reasonable attorneys' fees, and pre- and post-judgment interest.

## COUNT III – TRESPASS TO PERSONAL PROPERTY

64. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

65. By using invalid CPs to place traditional cookies and by impermissibly placing "Flash Cookies" on Plaintiffs' and Class members' computers without their consent and/or knowledge, Defendant has improperly exercised dominion and control over and interfered with Plaintiffs' and Class members' personal property.

66. Defendant's actions were knowing and intentional.

67. Defendant's actions caused harm to Plaintiffs and Class members, as described above.

FIRST AMENDED COMPLAINT - 13

MEYERS TERSIGNI FELDMAN & GRAY LLP
Two Union Square
601 Union Street, Suite 4200
Seattle, WA 98101-2380
(206) 652-3525

68. Plaintiffs and Class members seek damages for this harm as well as injunctive relief to remedy this harm.

### COUNT IV – RESTITUTION/UNJUST ENRICHMENT

69. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

70. At the expense of Plaintiffs and Class members, Defendant has improperly, illegally, and unjustly profited from the procurement and/or sale of Plaintiffs' and Class members' personal and private data. Defendant's actions were knowing and secretive with the intent that Plaintiffs and Class members would not realize what was being done.

71. Defendant's actions constitute violations of both statutory as well as common law obligations as outlined above.

72. Defendant's actions caused harm to Plaintiffs and Class members as described above.

73. Plaintiffs and Class members seek damages for this harm as well as injunctive relief to remedy this harm.

74. Defendant should not, in equity, be allowed to retain its ill-gotten gains. Plaintiffs, therefore, seek recovery from Defendant under the equitable theory of unjust enrichment.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant on their own behalf and on behalf of the other members of the Class for the following relief:

a. A declaration that this action may be maintained as a class action;

b. Compensatory, treble and/or punitive damages;

c. Disgorgement of monies obtained by Defendant through its unlawful conduct;

FIRST AMENDED COMPLAINT - 14

     d.     Injunctive relief preventing Defendant from continuing to use improper "cookies" and "Flash cookies" or other improper means to procure personal, private information of persons accessing Defendant's website;

     e.     Attorneys' fees, expert fees, and other litigation costs; and

     f.     Such other relief as may be found necessary to remedy the effects of Defendant's unlawful conduct.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Dated this 15th day of April, 2011.

<u>s/ Andrea Tersigni</u>
Andrea Tersigni, WSBA #30204
E-mail: andreatersigni@mtfglaw.com
Anthony L. Tersigni, WSBA #37675
E-mail: atersigni@mtfglaw.com
**Meyers Tersigni Feldman & Gray LLP**
Two Union Square
601 Union Street, Suite 4200
Seattle, WA 98101-2380
Telephone: (206) 652-3525
Facsimile: (206) 652-3205

Majed Nachawati
E-mail: mn@fnlawfirm.com
**Fears Nachawati Law Firm**
4925 Greenville Ave, Suite 715
Dallas, Texas 75206
Telephone: (214) 890-0711
Facsimile: (214) 890-0712

Jeremy R. Wilson
E-mail: jeremy@wtlfirm.com
**Wilson Trosclair & Lovins, P.L.L.C.**
302 N. Market St., Suite 510
Dallas, Texas 75202
Telephone: (214) 484-1930
Facsimile: (214) 276-1475

Attorneys for Plaintiff

FIRST AMENDED COMPLAINT - 15